UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HEIDI G. ILDEFONSO,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

Case No.  14-cv-01601-EDL

**ORDER**

Re: Dkt. Nos. 18, 19

On April 14, 2014, Plaintiff Heidi Ildefonso filed this lawsuit under 42 U.S.C. § 405(g) seeking judicial review of a decision denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 400 et seq.  On August 8, 2014, Plaintiff moved for summary judgment, asking the Court to remand for an immediate award of benefits or, alternatively, to remand for additional proceedings.  On September 12, 2014, Defendant filed a combined opposition to Plaintiff's motion and cross-motion for summary judgment asking the Court to affirm the Commissioner's decision.  On October 27, 2014, Plaintiff filed a reply.  For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED and Defendant's cross-motion for summary judgment is DENIED.  This matter is remanded for further proceedings in accordance with this Order.

## I.  FACTUAL BACKGROUND

### A.  General Background

Plaintiff was born in 1987.  (AR 159.)  Plaintiff graduated from high school and attended college for one year.  (AR 50, 202.)  Plaintiff has no hobbies, interests, or friends with whom she spends time.  (AR 63.)  Plaintiff worked as a floral clerk for seven years up until March 23, 2011, when she was fired for chronic lateness and tardiness.  (AR 185-87.)  Plaintiff has not engaged in substantial gainful activity during the alleged period of disability.  (AR 25.)  Plaintiff claims disability based on an affective disorder, post-traumatic stress disorder ("PTSD"), and borderline personality disorder.

### B.  Medical History

#### 1.  Alexander G. Elliston, Licensed Clinical Social Worker

In 2010, Plaintiff pursued treatment and was initially evaluated by Alexander Elliston. (AR 302.)  A November 2010 report by Mr. Elliston notes that Plaintiff "reports continued depression, suicidal ideation, hypersomnia, poor appetite, concentration, lack of energy or motivation for normal tasks, behavior marked by explosiveness and rage towards the father of her daughter" and "admits to chronic history of domestic violence, [and] past physical and current emotional abuse from [the father of her daughter]."  (AR 313.)  Mr. Elliston's report also notes that Plaintiff struggles to attend group therapy and admits that she rejects groups.  (AR 313.)  A February 11, 2011, report by Mr. Elliston notes that Plaintiff has reported experiencing "worsening of symptoms, exacerbated by [a] domestic violence relationship" and that Plaintiff has marginal impulse control, insight, and judgment. (AR 326.)

#### 2.  Robin C. Thiele, Registered Nurse

Ms. Thiele evaluated Plaintiff on November 5, 2010.  (AR 316.)  Ms. Thiele's report notes that Plaintiff stated that "she 'ran over and killed' a bicyclist . . . when she was 16" and that "[s]he started using drugs about that time but does not use now."  (AR 316.)  Her report also notes that Plaintiff stated that her "mother was physically abusive as a child." (AR 316.)  Ms. Thiele's report lists a diagnosis of "depression, major, recurrent."  (AR 216.)

#### 3.  Lynnell Morris, Licensed Clinical Social Worker

Plaintiff also was evaluated by Ms. Morris in November 2010.  Ms. Morris' report lists a diagnosis of "mood disorder" and notes that Plaintiff suffers from "depressed mood, crying, feeling overwhelmed, low energy, poor memory, low motivation, suicidal ideation (no plan or intend), internal agitation and anxiety about her family stress and her relationship."  (AR 318-19.)

#### 4.  Dr. Edward Hotchkiss Gaston, M.D.

On February 28, 2011, Plaintiff was evaluated by Dr. Hotchkiss.  His report reflects a diagnosis of "personality disorder, borderline."  (AR 328.)  His report also states that Plaintiff "can be depressed and entertaining suicidal ideation one day, and be perfectly happy the next. Anger is a prominent emotion reflecting [Plaintiff's] oversensit[i]vity and over-reactivity to

1    primarily interpersonal stressors.  She gets overwhelmed by affect."  (AR 329.)

2        **5.  Dr. Jay L. Danzig, Clinical Psychologist**

3        On June 8, 2011, Dr. Danzig evaluated Plaintiff for the California Department of

4    Rehabilitation.  (AR 280.)  With regard to Plaintiff's cognitive ability, Dr. Danzig found that

5    Plaintiff's "intellectual abilities fall within the bright normal range of intelligence with a

6    performance IQ of 113."  (AR 280.)  He also notes that he was "significantly impressed" with

7    Plaintiff's motivational level.  (AR 280.)  Dr. Danzig further noted that his impression is that

8    Plaintiff is an academic and vocational underachiever "who only has patience for working on

9    problems in which the solutions are quickly forthcoming."  (AR 281.)

10       With regard to vocational ability, Dr. Danzig found that Plaintiff

11       is continuing to experience both chronic as well as situationally
12       based anxiety, which has the potential to disrupt task oriented
         activities at almost any time.  In other words, her work performance
13       may vary from day to day, depending upon her mood state.  In
         addition, these data suggest that she has a basic wariness of others
14       and is overreactive to any form of negative feedback, criticism,
         and/or the experience of failure. . . . In actual work situations, she
15       may become impatient, irritable, even difficult to get along with if
         she believes that others are less than caring or understanding of her
16       needs.

17   (AR 287.)  Thus, Dr. Danzig concluded that "[a]t best" Plaintiff will need "a very slow, part time

18   transitional approach, wherein [Plaintiff] works independent of others."  (AR 287.)

19       **6.  Dr. T. Renfro, Psychologist**

20       On October 13, 2011, Dr. Renfro evaluated Plaintiff and performed a Comprehensive

21   Mental Status Evaluation.  Dr. Renfro noted that Plaintiff reported that her present illness began

22   approximately a year before she lost her job.  (AR 290.)  Plaintiff told Dr. Renfro that:

23       My employer told me to go to the doctor because I was crying at
         work and wasn't going into work regularly.  The doctor said I'd
24       been having depression for a long time but just didn't know it.  I
         think it started at 15 when I accidentally hit a mother on a bicycle
25       while I was driving my car.  I don't think I've dealt with it.  I wish it
         was me instead of her.

26   (AR 290.)  She also stated that her relationship problems with her daughter's father have

27   exacerbated her depression.  (AR 290-91.)

28       Dr. Renfro reported that Plaintiff "has no physical difficulty completing household tasks,

United States District Court
Northern District of California

but reportedly lacks the motivation emotionally to do so." (AR 291.)  He also stated that she has a license and can drive a car alone.  (AR 292.)  Furthermore, she can "pay bills and handle cash appropriately."  (AR 292.)

Finally, Dr. Renfro reported, from a mental health perspective, that:

> 1. She is able to understand, remember, and carry out simple one or two-step job instructions.
>
> 2. She is mildly impaired in her ability to do detailed and complex instructions.
>
> 3. She is mildly to moderately impaired in her ability to relate and interact with coworkers and the public.
>
> 4. She is mildly impaired in her ability to maintain persistence and pace.
>
> 5. She is mildly impaired in her ability to associate with day-to-day work activity, including attendance and safety.
>
> 6. She is mildly impaired in her ability to accept instructions from supervisors.
>
> 7. She is mildly to moderately impaired in her ability to perform work activities on a consistent basis.
>
> 8. She is able to perform routine, non-stressful work activities without special or additional supervision.

(AR 294.)  Dr. Renfro diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Mild" and "Alcohol and Amphetamine Abuse in Full Sustained Remission."  (AR 293.)

**7.  Diane Slade, Marriage & Family Therapist**

Beginning in April 2012, Plaintiff sought treatment through the Napa County Mental Health Department.  She was evaluated by Sharon McLaughlin, M.F.T., and subsequently began seeing Diane Slade.  (AR 381-392.)  On December 21, 2012, Ms. Slade completed a "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" for Plaintiff that noted that she suffers from moderate to severe limitations due to emotional disorders. Specifically, the report notes that Plaintiff has the following "moderate" limitations, defined as a "limitation which impairs, but does not preclude, the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule:"

The ability to remember locations and work-like procedures.

The ability to carry out short and simple instructions.

The ability to sustain an ordinary routine without special supervision.

The ability to interact appropriately with the general public.

The ability to ask simple questions or request assistance.

The ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.

The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

The ability to be aware of normal hazards and take appropriate precautions.

(AR 438-40.)

The report also notes that Plaintiff has the following "moderately severe" limitations, defined as a "limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule:"

The ability to understand and remember very short and simple instructions.

The ability to understand and remember detailed instructions.

The ability to carry out detailed instructions.

The ability to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure).

The ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.

The ability to make simple work-related decisions.

The ability to accept instructions and to respond appropriately to criticism from supervisors.

The ability to respond appropriately to changes in the work setting.

The ability to travel in unfamiliar places or to use public transportation.

(AR 438-40.)

Additionally, the report notes that Plaintiff has the following "severe" limitations, defined as a "limitation which precludes the individual's ability usefully to perform the designated activity or to sustain performance of the designated activity:"

> The ability to work in coordination with or proximity to others without being unduly distracted by them.
>
> The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
>
> The ability to set realistic goals or to make plans independently of others.

(AR 438-40.)

The report further states that Plaintiff has a "substantial loss" in (1) "ability to understand, remember, and carry out simple instructions;" (2) "ability to make judgments that are commensurate with the functions of unskilled work;" (3) "ability to respond appropriately to supervision, co-workers and usual work situations;" and (4) "ability to deal with changes in a routine work setting." (AR 441.) Finally, the report notes that Plaintiff is suffering from major depression and PTSD which is causing "difficulty functioning" and "difficulty coping with social interactions." (AR 442.)

## II. PROCEDURAL HISTORY

On March 25, 2011, Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i); 423(d), alleging disability beginning on March 23, 2011. (AR 195.) Plaintiff alleged that she was fired for repeated absence and tardiness. (AR 51.) On January 24, 2013, Administrative Law Judge Maxine Benbour ("ALJ") issued a decision finding that Plaintiff is not disabled and denying benefits. (AR 20-34.) The ALJ's decision became the final decision of the Commissioner on March 26, 2014, when the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

## III. LEGAL STANDARD

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether

United States District Court
Northern District of California

1    the findings of fact in the ALJ's decision are supported by substantial evidence or were premised

2    on legal error.  42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

3    Substantial evidence is relevant evidence that a reasonable person might accept as adequate in

4    support of a conclusion; it is "more than a mere scintilla but less than a preponderance."  Id.; see

5    also Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th

6    Cir.1997).

7            To determine whether the ALJ's decision is supported by substantial evidence, courts

8    review the administrative record as a whole, weighing both the evidence that supports and the

9    evidence that detracts from the ALJ's decision.  Sandgathe, 108 F.3d at 980 (quoting Andrews v.

10   Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  If the evidence is susceptible to more than one

11   rational interpretation, the court must uphold the ALJ's conclusion.  Burch v. Barnhart, 400 F.3d

12   676, 679 (9th Cir. 2005).  The trier of fact, not the reviewing court, must resolve conflicting

13   evidence, and if the evidence can support either outcome, the reviewing court may not substitute

14   its judgment for the judgment of the ALJ.  Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019

15   (9th Cir.1992).  An ALJ's decision will not be reversed for harmless error.  Id.; see also Curry v.

16   Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

17   **B.  Definition and Determination of Disability**

18           In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability

19   to engage in any substantial gainful activity by reason of any medically determinable physical or

20   mental impairment which can be expected to result in death or which has lasted or can be expected

21   to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The SSA

22   utilizes a five-step sequential evaluation process in making a determination of disability.  20

23   C.F.R. § 404.1520; see Reddick, 157 F.3d 715, 721.  If the SSA finds that the claimant is either

24   disabled or not disabled at a step, then the SSA makes the determination and does not go on to the

25   next step; if the determination cannot be made, then the SSA moves on to the next step.  20 C.F.R.

26   § 404.1520.

27           First, the SSA looks to the claimant's work activity, if any; if the claimant is engaging in

28   substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(I).  Second, the SSA

considers the severity of impairments: claimant must show that he has a severe medically
determinable physical or mental impairment (or combination of severe impairments) which has
which has lasted or is expected to last twelve months or end in death.  20 C.F.R. §
404.1520(a)(4)(ii).  Third, the SSA considers whether a claimant's impairments meet or equal a
listing in 20 C.F.R. Part 404 Appendix 1.  If so, the claimant is deemed disabled.  20 C.F.R. §
404.1520(a)(4)(iii).  Fourth, the SSA considers the claimant's residual functional capacity
("RFC") and past relevant work; if the claimant can still engage in past relevant work, he is not
disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, the SSA considers whether, in light of the
claimant's RFC and age, education, and work experience, the claimant is able to make an
adjustment to another occupation in the national economy.  20 C.F.R. § 404.1520(a)(4)(v); 20
C.F.R. § 404.1560(c).  The claimant has the initial burden of proving disability.  Reddick, 157
F.3d at 721.  If a claimant establishes an inability to perform her prior work at step four, the
burden shifts to the SSA to show that the claimant can perform other substantial work that exists
in the national economy at step five.  Id.

**IV. ADMINISTRATIVE HEARING**

At a hearing before the ALJ held on January 9, 2013, Plaintiff stated that she worked as a
florist manager at a grocery store from 2004 to 2011.  Plaintiff acknowledged that she was fired,
explaining that she "couldn't wake up to go to work.  It was hard for me to wake up in the
mornings." (AR 51.)  She stated that at one point she worked 40 hours a week; however, her
employer reduced her hours to 32 hours a week in an effort to accommodate her.  (AR 52.)  Even
with these reduced hours, Plaintiff stated that she still "couldn't wake up" and that she "would
sleep through the day" and didn't "know what was going on with" her.  (AR 52.)

Although Plaintiff began seeing a social worker through Kaiser in 2010, Plaintiff stopped
in October 2011 because she believed it wasn't working.  (AR 54.)  Plaintiff also testified to past
suicide attempts and that she currently feels suicidal approximately two times a month.  (AR 55-
56.)  Plaintiff further testified that she had been prescribed Fluoxetine and anxiety pills, which she
takes when she remembers.  (AR 57-58.)  Although Plaintiff testified that her depression
medication was ineffective as it makes her feel like she has "no emotions," she stated that her

anxiety pills help her sleep.  (AR 58, 62-63.)

Carol Potter, a lay witness, testified at the hearing that she works at a family resource center and that Plaintiff was referred to her shortly before she was fired from her job.  (AR 77.) Ms. Potter testified that Plaintiff's employer called her because they had an employee "going through some very traumatic issues."  (AR 77.)  Ms. Potter testified that when she met with Plaintiff, she "sobbed throughout, talked about her life being meaningless and how she should have been the one who died [in the car accident when she was sixteen] and not the other woman. And how it's not right, her children have a mother and this woman's children do not."  (AR 78.) Ms. Potter also testified that Plaintiff confided in her about "her relationship with her on again/off again boyfriend" and "a little bit of her relationship with her family."  (AR 78.)

Finally, vocational expert Malcolm Brodzinsky testified at the hearing that a "hypothetical individual of the claimant's age, education, work background" with "[n]o exertional limitations" who is limited "to simple, repetitive tasks with occasional contact with public and coworkers" could not do Plaintiff's past work.  (AR 84-85.)  However, Mr. Brodzinsky testified that there are other jobs that this hypothetical person could do, specifically: (1) packager; (2) housekeeping cleaner; and (3) kitchen helper/dishwasher.  (AR 85-86.)  Mr. Brodzinsky testified that if that hypothetical person missed work more than three times a month, that would "preclude all employment."  (AR 96.)  Furthermore, Mr. Brodzinsky testified that if that hypothetical person had anything more than a 5 percent "reduction in concentration, persistence, and pace," all work would be precluded.  (AR 86-87.)

## V.  ADMINISTRATIVE DECISION

On January 24, 2013, the ALJ concluded that Plaintiff was not disabled and issued a written decision.  (AR 23-34.)

### A.  Steps 1-3 of the Sequential Evaluation

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016.  (AR 25.)  The ALJ also found that Plaintiff has not engaged in substantial gainful activity since March 23, 2011.  (AR 25.)  Further, the ALJ found that Plaintiff suffers from the following severe impairments: (1) affective disorder; (2) PTSD; and (3)

United States District Court
Northern District of California

9

borderline personality disorder.  (AR 25.)  However, the ALJ found that because Plaintiff's history

of polysubstance abuse is in full and sustained remission, it is "non-severe."  (AR 25.)

Additionally, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments of 20

CFR Part 404, Subpart P, Appendix 1.  (AR 25.)  None of these findings are disputed.

**B. Step 4 of the Sequential Evaluation**

The ALJ found that Plaintiff has the residual functional capacity to perform a full range of

work at all exertional levels but with the following nonexertional limitations: Plaintiff is limited to

simple, repetitive tasks with occasional interaction with co-workers and the public.  (AR 27.)

Considering the evidence, the ALJ found that although Plaintiff apparently suffered

extreme trauma from fatally injuring a pedestrian, she has not consistently exhibited PTSD

symptoms.  (AR 29-30.)  The ALJ also found that although Plaintiff has complained of significant

depressive symptoms to which she attributes her inability to work, the record shows that Plaintiff

has not been fully compliant with treatment.  (AR 30 (citing a number of instances where Plaintiff

missed or was late to appointments and was ambivalent towards treatment).)  The ALJ found that

Plaintiff's therapy has focused more on situational problems with her boyfriend than with

treatment to improve Plaintiff's emotional symptoms so that she can return to work.  (AR 31.)

The ALJ also found that when Plaintiff has consistently followed through with her treatment plan,

the evidence reflects that there has been improvement in her symptoms.  (AR 30.)  The ALJ

concluded that Plaintiff has received very conservative and symptomatic care that is inconsistent

with Plaintiff's claimed symptoms and limitations.  (AR 32.)

The ALJ found that the medical evidence supports Dr. Renfro's opinion and relied on his

opinion.  (AR 30.)  The ALJ also noted that Dr. Renfro found that Plaintiff is limited in her ability

to interact appropriately with co-workers and the public and that Dr. Danzig questioned Plaintiff's

ability to maintain appropriate workplace relationships.  (AR 30.)  The ALJ found that Plaintiff is

limited to only occasional interaction with co-workers and the public.  (AR 30.)  However, the

ALJ was not persuaded that Plaintiff would have difficulty maintaining socially appropriate

interactions with supervisors.  (AR 30.)  Although Dr. Danzig noted problems with accepting

1   instruction and negative criticism, Ms. Potter reported that Plaintiff's former employer considered

2   Plaintiff to be a good employee who did not have supervision problems.  (AR 30.)

3        The ALJ discounted Dr. Danzig's recommended part-time slow transitional approach in

4   vocational rehabilitation, noting that Plaintiff had worked previously on a full-time basis and that

5   her limitations do not warrant working only on a part-time schedule.  (AR 31.)  The ALJ also

6   found Ms. Potter's belief that Plaintiff is incapable of working to be not entirely credible as Ms.

7   Potter is not an acceptable medical source, she did not keep progress reports substantiating

8   Plaintiff's symptoms, and her statements are based in large part on Plaintiff's subjective

9   complaints.  (AR 31.)

10       Further, the ALJ gave minimal weight to Ms. Slade's opinion, noting that although she is a

11  treating source, she only provided treatment for Plaintiff from May 2012 through August 2012 and

12  therefore she does not have enough knowledge to discount Dr. Renfro and Dr. Danzig's opinions.

13  (AR 31.)  Additionally, the ALJ noted that Plaintiff was not taking medication when she initially

14  met with Ms. Slade.  (AR 31.)  After Plaintiff resumed taking medication, the ALJ noted that her

15  symptoms improved.  (AR 31.)

16       Finally, the ALJ found that despite Plaintiff's subjective complaints that her emotional

17  symptoms seriously compromise her abilities and a report by Plaintiff's brother and a statement by

18  Plaintiff's sister that allege that Plaintiff suffers from severe functional loss, the evidence showed

19  that Plaintiff has some independence and abilities.  (AR 32.)  Specifically, Plaintiff admitted that

20  she can complete household chores, drive a car, and shop on her own.  (AR 32.)  She is also able

21  to care for her children with the help of her mother.  (AR 32.)  Furthermore, there is evidence that

22  Plaintiff can favorably respond to treatment.  (AR 32.)

23  **C.  Step 5 of the Sequential Evaluation**

24       Given Plaintiff's limitations, the ALJ found that Plaintiff is unable to perform any of her

25  past relevant work.  (AR 33.)  However, the ALJ found that there are jobs that exist in significant

26  numbers in the national economy that Plaintiff can perform.  (AR 33.)

27       The ALJ stated that Plaintiff's ability to perform work at all exertional levels was

28  compromised by her nonexertional limitations.  (AR 33.)  Therefore, to determine the extent to

United States District Court
Northern District of California

11

1   which these limitations erode the occupational base of unskilled work at all exertional levels, the

2   ALJ asked the vocational expert whether jobs exist in the national economy for a hypothetical

3   person with Plaintiff's characteristics.  (AR 33.)  The vocational expert testified that such a

4   hypothetical person would be able to perform the requirements of a hand packager, a housekeeper,

5   and a kitchen helper/dishwasher.  (AR 34.)  The ALJ concluded that based on Plaintiff's age,

6   education, work experience, and residual functional capacity, Plaintiff was capable of making a

7   successful adjustment to other work that exists in significant numbers in the national economy.

8   (AR 34.)  The ALJ found Plaintiff not disabled.  (AR 34.)

9   **VI. DISCUSSION**

10  Plaintiff seeks reversal of the ALJ's opinion and an award of benefits, or alternatively,

11  Plaintiff asks that the Court remand for further proceedings.  Plaintiff argues that the ALJ

12  improperly rejected the opinions of Dr. Renfro, Dr. Danzig, and Ms. Slade, and improperly

13  rejected testimony from Plaintiff and Ms. Potter.

### A. The ALJ Erred by Failing to Properly Evaluate the Opinions of Dr. Renfro and Danzig

15  "In disability benefits cases . . . physicians may render medical, clinical opinions, or they

16  may render opinions on the ultimate issue of disability—the claimant's ability to perform work."

17  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).  "In conjunction with the

18  relevant regulations, we have . . . developed standards that guide our analysis of an ALJ's

19  weighing of medical evidence."  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.

20  2008).  Specifically, we "distinguish among the opinions of three types of physicians: (1) those

21  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

22  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

23  physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995).  "As a general rule, more weight

24  should be given to the opinion of a treating source than to the opinion of doctors who do not treat

25  the claimant."  Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987)).  While the opinion

26  of a treating physician is thus entitled to greater weight than that of an examining physician, the

27  opinion of an examining physician is entitled to greater weight than that of a non-examining

28

United States District Court
Northern District of California

12

physician.  See Ryan, 528 F.3d at 1198. "The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'"  Id. (quoting § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Id.  This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight ... even if it does not meet the test for controlling weight."  Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007).  An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  "The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Id. (citation omitted).

Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.  See Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996).  In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.  See id.

**1.  Dr. Renfro, Examining Pyschologist**

Dr. Renfro is a psychologist who performed a Comprehensive Mental Status Evaluation on Plaintiff.  Significantly, Dr. Renfro concluded that Plaintiff "is able to perform routine, non-stressful work activities without special or additional supervision." (AR 294.)  However, Dr. Renfro concluded that Plaintiff "is mildly impaired in her ability to associate with day-to-day work activity, including attendance and safety" and that Plaintiff "is mildly to moderately impaired in her ability to perform work activities on a consistent basis." (AR 294.)  The ALJ relied on Dr. Renfro's assessment.  (AR 30.)

Plaintiff argues that the ALJ improperly rejected without reason Dr. Renfro's limitations in

1    her RFC finding.  The vocational expert testified that a "hypothetical individual of the claimant's

2    age, education, [and] work background" with "[n]o exertional limitations" who is limited "to

3    simple, repetitive tasks with occasional contact with public and coworkers" could find work in the

4    previously mentioned positions.  (AR 85-86.)  However, that expert testified that if the

5    hypothetical person has anything more than a five percent "reduction in concentration, persistence,

6    and pace," all work would be precluded.  (AR 86-87.)  Plaintiff thus argues that the impairments

7    identified by Dr. Renfro "[c]ertainly fall[] well within the 5% reduction contemplated in the

8    [vocational expert's] testimony," so the ALJ improperly rejected evidence that establishes that

9    Plaintiff is disabled.

10          In response, Defendant notes that the Ninth Circuit has held that an ALJ's assessment of a

11   Plaintiff "adequately captures restrictions related to concentration, persistence, or pace where the

12   assessment is consistent with restrictions identified in the medical testimony."  Stubbs-Danielson

13   v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  Defendant thus argues that the ALJ properly

14   translated Dr. Renfro's assessment into an RFC limiting Plaintiff to simple, repetitive tasks with

15   occasional interaction with co-workers and the public.  Defendant also cites Redd v. Astrue, 2012

16   WL 846458, at *3 (C.D. Cal. Mar. 13, 2012), for the proposition that the RFC adequately

17   addresses Dr. Renfro's finding of an attendance limitation.

18          Although the ALJ never explicitly rejected Dr. Renfro's findings, Plaintiff is correct that

19   the ALJ did not specifically address Dr. Renfro's finding that Plaintiff is mildly to moderately

20   impaired in her ability to perform work activities on a consistent basis and is mildly impaired with

21   regard to attendance and safety.  Instead, the opinion focuses on Dr. Renfro's finding that Plaintiff

22   "is able to perform routine, non-stressful work activities without special or additional

23   supervision."  However, Dr. Renfro only found that Plaintiff is able to perform these activities in

24   conjunction with the mild to moderate impairments listed above.  (AR 294.)  The ALJ's opinion

25   does not address how these limitations impact the vocational expert's assessment that if Plaintiff

26   had anything more than a five percent "reduction in concentration, persistence, and pace," all work

27   would be precluded.  (See AR 96.)

28          Furthermore, the cases cited by Defendant are distinguishable.  Stubbs-Danielson only

United States District Court
Northern District of California

14

pertains to concentration, persistence and pace.  That case does not suggest that the RFC adequately takes into account Plaintiff's attendance and safety limitations.    Moreover, unlike in Stubbs-Danielson, the ALJ did not need to "translate" Dr. Renfro's report into "concrete limitations" as the report plainly and expressly lists Plaintiff's limitations.  (AR 294.) Additionally, Redd is distinguishable as it only concluded that a restriction to "simple tasks" adequately captured "limitations in the areas of concentration, attention, persistence, pace, and adaption."  2012 WL 846458, at *3.  With regard to attendance, Redd found that "there is simply no indication from any medical source that such limitations prevent Plaintiff from engaging in simple, repetitive tasks."  Id.  Here, by contrast, Dr. Renfro found that Plaintiff is "mildly impaired in her ability to associate with day-to-day work activity, including attendance and safety" (AR 294) and the vocational expert's testimony indicates that missing work "more than three times a month" could "preclude all employment" (AR 86).  Therefore, Plaintiff's argument is well-taken that the ALJ did not provide specific and legitimate reasons for disregarding Dr. Renfro's findings that Plaintiff is mildly to moderately impaired in her ability to perform work activities on a consistent basis and is mildly impaired with regard to attendance and safety.

### 2.  Dr. Danzig, Examining Psychologist

Dr. Danzig performed a psychological assessment of Plaintiff for the California Department of Rehabilitation in June 2011.  (AR 284.)  The ALJ credited Dr. Danzig's finding that Plaintiff is limited in her ability to maintain appropriate workplace relationships, noting that it supported Dr. Renfro's finding of "mild to moderate limitation in social interaction."  (AR 30.) However, the ALJ discredited Dr. Danzig's finding that Plaintiff has problems accepting criticism (AR 287) because Ms. Potter reported that Plaintiff's former employer considered her to be "a good employee without express problems with supervision"  (AR 30).  The ALJ also discredited Dr. Danzig's recommendation that, at best, Plaintiff needs to take a part-time slow transitional approach in vocational rehabilitation (AR 287) on the grounds that Plaintiff "worked on a full-time basis in the past" and limiting Plaintiff to "simple, repetitive tasks with limited interaction with others in the workplace does not warrant a return to work on only a part-time schedule"  (AR 31).

1    As Plaintiff correctly argues, the ALJ's reasoning is neither clear and convincing nor based

2    on substantial evidence.  Although Ms. Potter testified that Plaintiff's former employer "loved"

3    Plaintiff and stated that Plaintiff has "been a good employee," Ms. Potter also testified that the

4    employer told her that Plaintiff was "going through some very traumatic changes," wasn't "able to

5    show up on time for work" and wasn't "totally present when she got to work."  (AR 77-78.)

6    These comments do not rebut Dr. Danzig's finding that Plaintiff "has a basic wariness of others

7    and is overreactive to any form of negative feedback, criticism, and/or the experience of failure."

8    (AR 287.)  Plaintiff is also correct that the ALJ's observation that Plaintiff previously worked full-

9    time does not amount to a clear and convincing reason to reject Dr. Danzig's recommendation

10   that, at best, Plaintiff needs to take a "very slow, part time transitional approach, wherein

11   [Plaintiff] works independent of others."  (AR 287.)  Plaintiff only worked full-time prior to her

12   symptoms worsening, after which her employer reduced her hours.  (AR 50.)  By contrast, Dr.

13   Danzig's evaluation of Plaintiff occurred after her symptoms worsened.  Furthermore, as Plaintiff

14   points out, this finding that Plaintiff is at best limited to part-time work renders her disabled.  See

15   Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) ("'The ability to work only a few hours a

16   day or to work only on an intermittent basis is not the ability to engage in "substantial gainful

17   activity."'" (quoting Cornett v. Califano, 590 F.2d 91, 94 (4th Cir. 1978))); Lester, 81 F.3d at 833

18   ("In evaluating whether the claimant satisfies the disability criteria, the Commissioner must

19   evaluate the claimant's 'ability to work on a *sustained* basis.'" (quoting 20 C.F.R. § 404.1512(a))

20   (emphasis in original)); SSR 96-8p ("RFC is an assessment of an individual's ability to do

21   sustained work-related physical and mental activities in a work setting on a regular and continuing

22   basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent

23   work schedule.")

24   Defendant does not contest these arguments and instead offers other reasons not included

25   in the ALJ's analysis that the ALJ could have used to discredit Dr. Danzig's report.  First,

26   Defendant argues that Dr. Danzig's assessment that Plaintiff's "intellectual abilities fall within the

27   bright normal range of intelligence" (AR 280) is inconsistent with Dr. Danzig's observation

28   regarding Plaintiff's functional capacity.  (Opp. at 5.)  Second, Defendant argues that Dr. Renfro's

United States District Court
Northern District of California

1    opinion undercuts Dr. Danzig's conclusions regarding Plaintiff's work-related limitations.

2    Defendant specifically references Dr. Renfro's finding that "Plaintiff had only mild to moderate

3    restrictions in her ability to perform a full range of mental work-related activities" and that

4    Plaintiff "had normal appearance, attitude, behavior, eye contact, speech, thought process,

5    intellectual functioning, memory, concentration, and abstract thinking."  (Opp. 5-6.)  Finally,

6    Defendant argues that Plaintiff's improvement through treatment undercuts Dr. Danzig's opinion

7    regarding Plaintiff's functional restrictions.  (Opp. at 6.)

8          However, this Court cannot affirm the ALJ's decision based on grounds the ALJ did not

9    invoke.  Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001) ("[W]e cannot affirm the

10   decision of an agency on a ground that the agency did not invoke in making its decision . . . Thus,

11   if the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not

12   invoked by the Commissioner in denying the benefits originally, then we must decline." (citing

13   SEC v. Chenery Corp., 332 U.S. 194, 196 (1947))).  Even assuming that the ALJ had considered

14   Defendant's arguments, they still do not amount to specific and legitimate reasons for rejecting Dr.

15   Danzig's report.  First, Dr. Danzig's report is not internally inconsistent.  Dr. Danzig's conclusion

16   that Plaintiff is "within the bright normal range of intelligence" (AR 280) is not inconsistent with

17   his observation that Plaintiff "is continuing to experience both chronic as well as situationally

18   based anxiety" that can disrupt her work and make her unreceptive to criticism  (AR 287).

19   Similarly, the cited portions of Dr. Renfro's opinion, which relate to Plaintiff's mental abilities, do

20   not undercut Dr. Danzig's analysis.  Rather, Dr. Renfro actually concluded that Plaintiff "is mildly

21   impaired in her ability to associate with day-to-day work activity . . . is mildly impaired in her

22   ability to accept instructions from supervisors . . . [and] is mildly to moderately impaired in her

23   ability to perform work activities on a consistent basis." (AR 294.)  Finally, although medical

24   improvement through treatment might undercut Dr. Danzig's recommendation of a slow part-time

25   transitional approach to vocational rehabilitation, the ALJ's opinion does not reject Dr. Danzig's

26   opinions on that basis.

27   **B.  The ALJ Erred by Improperly Discounting Plaintiff's Testimony**

28         In determining whether a claimant's testimony regarding subjective pain or other

United States District Court
Northern District of California

17

1    symptoms is credible, the ALJ must engage in a two-step process.  Lingenfelter v. Astrue, 504

2    F.3d 1028, 1035-6 (9th Cir. 2007).  First, the ALJ must determine whether the claimant has

3    submitted objective medical evidence of the underlying impairment "which could reasonably be

4    expected to produce the pain or other symptoms alleged."  Id. (citing Bunnell v. Sullivan, 947 F.2d

5    341, 344 (9th Cir. 1991)).  Next, if the claimant meets this first step, and there is no evidence of

6    malingering, the ALJ can only reject the claimant's testimony about the severity of her symptoms

7    by offering specific, clear and convincing reasons for doing so.  Id. at 1036 (citing Smolen v.

8    Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  If the ALJ's credibility finding is supported by

9    substantial evidence in the record, the Court may not second-guess the ALJ's finding.  Thomas v.

10   Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595,

11   600 (9th Cir. 1999).

12         The ALJ found that "the claimant's medically determinable impairments could reasonably

13   be expected to cause the alleged symptoms."  (AR 32.)  Thus, the first step is satisfied.  See

14   Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

15         With regard to the second step, the ALJ found that Plaintiff's statements pertaining to "the

16   intensity, persistence, and limiting effects of these symptoms" are not entirely credible.  (AR 32.)

17   Specifically, the ALJ found that Plaintiff "has received very conservative and symptomatic care

18   that is inconsistent with the severe symptoms and limitations claimed" and that the "medical

19   findings and opinions also do not support the level of severity of her symptoms."  (AR 32.)  The

20   ALJ also noted that "[m]edical records show that [Plaintiff] reported a favorable response to

21   medication when taken on a regular basis."  (AR 32.)  The ALJ further found that Plaintiff's

22   statements that she is able to, with the assistance of her mother, care for her children, and that she

23   is able to drive, shop, and to perform household chores "discounts [Plaintiff's] allegation that her

24   emotional symptoms seriously compromise her abilities."  (AR 32.)

25         Plaintiff first argues that the ALJ's conclusion that Plaintiff has received "conservative"

26   care is inconsistent with her alleged symptoms, is not based on substantial evidence and is

27   contrary to the record.  Plaintiff is correct that the ALJ does not appear to base this finding on

28   anything more than the ALJ's own evaluation of the medical evidence.  While Defendant is

United States District Court
Northern District of California

18

correct that the Ninth Circuit has held that in some circumstances, evidence of conservative treatment is sufficient to discount the stated severity of a plaintiff's symptoms, those cases involved physical and not mental conditions.  For example, Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), concerned a claim of disabling knee pain that the ALJ discredited by citing evidence that the plaintiff had normal range of motion in his knee and that his knee was treated with over-the-counter pain medications.  Id.  In that context, the Ninth Circuit held that the ALJ's assessment that the plaintiff had been undergoing conservative treatment was proper.  Id.; see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly noted "the absence of medical treatment for claimant's back problem between 1983 and October 23, 1986, suggesting that if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time").  Here, by contrast, the ALJ concluded that Plaintiff's treatment for her mental conditions was "conservative," but cited no basis for that conclusion and no evidence that another course of treatment would be suitable.

Next, the Parties dispute whether the ALJ properly referenced Plaintiff's noncompliance with, and favorable response to, treatment. (See AR 310, 313, 323, 326, 401, 403, 407, 409, 413 (records reflecting Plaintiff's noncompliance with treatment).)  The Ninth Circuit has held that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation. . . . In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." Garrison v. Colvin, 759 F.3d 995, 1018 n.24 (9th Cir. 2014); see also Wake v. Comm'r of Soc. Sec., 461 F. App'x 608, 609 (9th Cir. 2011) ("'Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996))).  However, where there is no "medical evidence that [Plaintiff's] resistance [to treatment] was attributable to her mental impairment rather than her own personal preference," it is reasonable for an ALJ to conclude that the "level or frequency of treatment [is] inconsistent with the level of complaints." Molina v. Astrue, 674 F.3d 1104, 1114

United States District Court
Northern District of California

1    (9th Cir. 2012).  Here, as in <u>Garrison</u>, there is some evidence that Plaintiff's inability to follow

2    through with treatment is "at least in part a result of her underlying . . . psychiatric issues."

3    <u>Garrison</u>, 759 F.3d at 1018 n.24.  As the ALJ acknowledged, Plaintiff suffers from  affective

4    disorder, PTSD, and borderline personality disorder (AR 25) and Plaintiff testified that she has

5    trouble motivating herself, that she often cannot get out of bed, and that she "sleep[s] through the

6    day."  (AR 52.)  This testimony is consistent with Dr. Danzig's finding that Plaintiff's anxiety

7    "has the potential to disrupt task oriented activities at almost any time" (AR 287) and Dr. Renfro's

8    finding that Plaintiff is mildly impaired in her ability to perform activities on a consistent basis

9    (AR 294).[1]

10           Furthermore, Defendant's reliance on <u>Molina</u> is misplaced.  The ALJ's decision there "did

11   not expressly place any weight on [plaintiff's failure to seek or follow prescribed treatment] in

12   discounting [plaintiff's] credibility."  674 F.3d at 1113.  Further, the plaintiff's reason there for

13   resisting psychiatric treatment was not supported by any medical evidence that her resistance was

14   due to her mental impairment as opposed to her personal preference.  <u>Id.</u> at 1114.  Here, there is

15   some evidence that suggests that Plaintiff's failure to follow through with treatment is partially

16   caused by her underlying medical conditions, although it was not well developed.  Additionally,

17   even if there was no evidence linking Plaintiff's mental condition to her noncompliance with

18   treatment, the ALJ still would have needed to make a specific finding that Plaintiff lacked good

19   cause for her noncompliance with treatment.  <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641 (9th Cir. 1995)

20   (requiring an ALJ to make specific findings before denying benefits based on noncompliance with

21   treatment, including a lack of good cause for failure to comply and that compliance would allow

22   plaintiff to return to work).[2]

23   _____

24   [1] Plaintiff also argues with regard to her treatment noncompliance that the ALJ failed to assess a
     prior decision by the California Unemployment Insurance Board.  (AR 186-88.)  However, that
25   decision only found that Plaintiff's absences from work were not deliberate.  (AR 187.)  The
     decision does not address whether or not Plaintiff's noncompliance with treatment was volitional.
26   Therefore, the ALJ could have properly disregarded that decision without comment.  <u>See</u> <u>Howard</u>
     <u>v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) ("in interpreting the evidence and developing the
27   record, the ALJ does not need to 'discuss every piece of evidence.'" (citing <u>Black v. Apfel</u>, 143
     F.3d 383, 386 (8th Cir. 1998))).
28   [2] Plaintiff is incorrect that SSR 82-59 necessitates remand for an immediate award of benefits in
     this case.  (<u>See</u> Reply 8-9.)  That rule only applies where the ALJ's "ultimate finding that claimant

1    Plaintiff is also correct that the ALJ improperly discounted the severity of Plaintiff's

2    symptoms based on her daily activities.  Plaintiff testified that she is able to perform some chores

3    around the house, drive and shop and, with assistance from her mother, care for her children.  The

4    ALJ made no substantive analysis linking these specific abilities with Plaintiff's allegations of

5    disability.  As the Ninth Circuit has noted, "'[t]he critical differences between activities of daily

6    living and activities in a full-time job are that a person has more flexibility in scheduling the

7    former than the latter, can get help from other persons . . . and is not held to a minimum standard

8    of performance, as she would be by an employer.  The failure to recognize these differences is a

9    recurrent, and deplorable, feature of opinions by administrative law judges in social security

10   disability cases.'"  Garrison, 759 F.3d at 1016 (9th Cir. 2014) (quoting Bjornson v. Astrue, 671

11   F.3d 640, 647 (7th Cir. 2012).)  The cases cited by Defendant are not to the contrary.  Molina

12   involved an allegation of an "inability to tolerate even minimal human interaction" that was

13   discredited by Plaintiff's daily activities which included "walking her two grandchildren to and

14   from school, attending church, shopping, and taking walks."  674 F.2d at 1113.  Similarly, Burch

15   v. Barnart, 400 F.3d 676, 680 (9th Cir. 2005), involved allegations of extreme pain which were

16   discounted by daily activities that suggested that the plaintiff could perform work activities despite

17   the alleged pain.  Here, by contrast, there is no clear link between Plaintiff's daily activities and

18   the ALJ's opinion discrediting the severity of Plaintiff's symptoms.

19   **C.  The ALJ erred by Assigning Minimal Weight to the Opinions of Diane Slade, Marriage & Family Therapist**

20   Ms. Slade found that Plaintiff suffers from significant limitations due to her disorders. (See

21   AR 438-40.) The ALJ gave minimal weight to her opinion because Ms. Slade only treated Plaintiff

22   for a few months in 2012, because Plaintiff was not taking her medication for a period of time

23

24

25   is not disabled rest[s], *in significant part*, on [the ALJ's] expressed perception that [plaintiff's] failure to follow a prescribed treatment caused [plaintiff's] condition to be worse than it might

26   otherwise be."  Ibarra v. Commissioner of the Social Security Administration, 92 F. Supp. 2d 1084, 1087 (D. Or. 2000) (emphasis added); see also Roberts v. Shalala, 66 F.3d 179, 183 (9th

27   Cir. 1995) ("The procedures that SSR 82–59 mandates, however, only apply to claimants who would otherwise be disabled within the meaning of the Act.").  The rule is inapplicable here

28   because the ALJ makes only passing reference to noncompliance with treatment as one factor in discrediting Plaintiff's testimony.  (See AR 32.)

United States District Court
Northern District of California

while she was receiving treatment from Ms. Slade and because Dr. Danzig's evaluation "provided findings that support a capacity for work that contradicts Ms. Slade's opinion." (AR 31.)

While the Parties agree that Ms. Slade is not an "acceptable medical source" within the meaning of the Social Security Rules, they disagree over the appropriate weight that an ALJ must give to her opinions. See 20 C.F.R. § 404.1513(a) (defining acceptable medical sources).  As a therapist, Ms. Slade is an "other source" within the meaning of the social security statute.  See id. § 404.1513(d)(1) ("Other sources include, but are not limited to . . . Medical sources not listed in paragraph (a) of this section (for example . . . therapists").  Such a source may be discredited for germane reasons.  See Molina, 674 F.3d at 1111-12 ("Wheelwright did not qualify as a medically acceptable treating source because she was a physician's assistant. . . . The ALJ gave several germane reasons for discounting Wheelwright's opinions in favor of the conflicting testimony. . . . Accordingly, the ALJ did not err in discounting Wheelwright's opinion."); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (an ALJ can discredit an "other source" if "the ALJ 'gives reasons germane to each witness for doing so.'" (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).  However, "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source,' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."  SSR 06-3p.

Here, the ALJ did not provide germane reasons for discrediting Ms. Slade's opinion.  The ALJ discredited Ms. Slade for only having provided treatment from May 2012 through August 2012, noting that "Ms. Slade has not provided long-term care with sufficient background knowledge to discount the opinions of Dr. Renfro and Dr. Danzig." (AR 31.)  However, out of the three, Ms. Slade is the *only* treating source.  Dr. Renfro only examined Plaintiff once.  (AR 290.) Furthermore, as noted above, the ALJ did not fully accept Dr. Renfro and Dr. Danzig's opinions. Additionally, the ALJ did not indicate how Ms. Slade's opinions are actually inconsistent with Dr. Renfro's or Dr. Danzig's analysis. Rather, the ALJ merely stated that Dr. Danzig "provided findings that support a capacity for work that contradicts Ms. Slade's opinion."  (AR 31.) However, contrary to the ALJ's assertion, Dr. Danzig recommended that Plaintiff take, at best, a

United States District Court
Northern District of California

slow part-time transitional approach to vocational rehabilitation.  (AR 287.)  It is unclear how that recommendation is inconsistent, if at all, with Ms. Slade's analysis.  Additionally, Defendant argues that Dr. Renfro's findings regarding Plaintiff's appearance, attitude and speech are inconsistent with Ms. Slade's assessment.  (Opp. at 12.)  However, the fact that Dr. Renfro observed in October 2011 that Plaintiff was adequately groomed, generally cooperative and had normal speech does not discount any of Ms. Slade's findings, made over a year later in December 2012, pertaining to Plaintiff's vocational ability.  Finally, Defendant argues that the ALJ properly referenced Plaintiff's noncompliance with treatment in discrediting Ms. Slade's opinion.  (Opp. at 12-13.)  However, Ms. Slade was able to observe Plaintiff both on and off her medications, and incorporate those observations into her findings.  (See AR. 400-402 (reports indicating that Ms. Slade counseled Plaintiff to take her medications and that once Plaintiff took her medications, her symptoms improved).)  Thus, it is unclear how Plaintiff's noncompliance with treatment discounts Ms. Slade's opinion.

**D.  The ALJ Must Consider Lay Witness Testimony on Remand**

    **1.  Ms. Potter**

       The ALJ rejected Ms. Potter's testimony because she is not an acceptable medical source, because "[t]here are no progress reports substantiating the severe symptoms indicated" and because the ALJ found that Ms. Potter's testimony was based "on the claimant's subjective complaints" that the ALJ did not find to be credible.  (AR 31.)  However, Ms. Potter's progress reports subsequently became part of the record when they were submitted to the Appeals Council.  Therefore, this Court "must consider [them] in determining whether the Commissioner's decision is supported by substantial evidence."  <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1162-63 (9th Cir. 2012) ("Because the regulations require the Appeals Council to review the new evidence, this new evidence must be treated as part of the administrative record." (quoting <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir. 1996).)  Those reports consist of notes from a series of sessions with Plaintiff from January 2011 to February 2013.  The notes substantiate Ms. Potter's observations that Plaintiff was going through some difficult and traumatic issues, had relationship problems with her boyfriend, and contemplated suicide. (<u>See</u> AR 444-97.)  The existence of these

United States District Court
Northern District of California

notes also contradicts the ALJ's finding that Ms. Potter's conclusions are based only on Plaintiff's "subjective complaints" because there are no progress reports**.**  Furthermore, for the reasons previously stated, Dr. Renfro's observations pertaining to Plaintiff's appearance, attitude, and speech are not inconsistent with Ms. Potter's testimony, nor is her testimony discredited because of Plaintiff's treatment history.

### 2.  Plaintiff's Brother and Sister Yoana

The record before the ALJ included testimony from Plaintiff's brother and sister Yoana that, similar to Plaintiff's testimony, indicated that Plaintiff had difficulty with daily activities and social interaction, that Plaintiff had suicidal thoughts and that she required assistance to care for her children.  (AR 208-215, 250-259.)  The ALJ discredited this testimony because of "the daily activities pursued by the claimant, including caring for her children and completing household chores, the medical opinions of record, and the favorable response to treatment."  (AR 32.) However, for the same reasons discussed above with regard to Plaintiff's testimony, this is an insufficient basis for discounting the testimony of Plaintiff's brother and sister Yoana.

### 3.  Plaintiff's Mother and Sister Edith

Neither Plaintiff's mother nor her sister Edith testified at the ALJ hearing. Plaintiff submitted their testimony on appeal and argues that the Appeals Council's failure to address their testimony constitutes reversible error. However, as Defendant correctly notes, this Court does "not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." Brewes, 682 F.3d at 1161.  Nevertheless, because this testimony is now part of the record, the ALJ should consider this evidence on remand.

## VII.   REMAND OR REVERSAL

If a court finds that the ALJ erred or that his findings are not supported by substantial evidence, the court must decide whether to award benefits or remand the case for further proceedings. Evidence should be credited in favor of the claimant and an immediate award of benefits can be directed if the following three factors are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must

be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (citing Smolen, 80 F.2d at 1292). However, there is some flexibility to these factors and remand is appropriate even when they are met if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014). The decision of the district court whether to remand for further development of the administrative record or to direct an immediate award of benefits is a fact-bound determination subject only to review for abuse of discretion. Id. at 1777; see also Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) (holding that a remand is necessary where the ALJ failed to make adequate findings but that a reversal is appropriate where the record was thoroughly developed and a rehearing would simply delay receipt of benefits).

Here, there are outstanding issues that must be resolved before a determination of disability can be made, most importantly, whether Plaintiff's limitations identified by Dr. Danzig and Dr. Renfro amount to an inability to work according to the vocational expert's testimony that missing three or more days a month or having a greater than five percent reduction in concentration, persistence, and pace would preclude all employment, or whether Plaintiff's limitations would enable her to miss fewer days and amount to a smaller reduction in those abilities. Additionally, remand will provide the ALJ with an opportunity to consider the evidence that Plaintiff presented for the first time on appeal.

**VIII.   CONCLUSION**

Accordingly, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross-Motion for Summary Judgment is denied. This matter is remanded for further proceedings in accordance with this Order.

**IT IS SO ORDERED**.

Dated: March 13, 2015

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California